J-S71019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARTIN J. PATTERSON, | |
| Appellant | No. 366 WDA 2015 |

Appeal from the Judgment of Sentence February 3, 2015
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000232-2014

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 22, 2016**

Appellant, Martin J. Patterson, appeals from the judgment of sentence entered following his conviction for driving under the influence ("DUI"). We affirm.

The trial court summarized the factual history of this case as follows:

Jason Hodgkiss, an employee at Klapec Trucking Company, was working on the night of February 17, 2014. At 1:00 a.m., Mr. Hodgkiss received a call from his girlfriend stating that an inebriated man appeared to be stuck in his vehicle in the ditch across the road from their residence. Mr. Hodgkiss left work immediately and began traveling home. When Mr. Hodgkiss arrived at his residence, he attempted to help [Appellant] remove his car from the ditch, but upon drawing closer to [Appellant], Mr. Hodgkiss noticed the odor of alcohol emanating from [Appellant]. [Appellant] had relayed to Mr. Hodgkiss that he was "just going to get some burgers to bring back to his kids." When Jason Hodgkiss first made contact with [Appellant], the engine of the car was still on. Once Jason Hodgkiss noticed the odor of alcohol, he called the Titusville police. Because Mr. Hodgkiss lived in Venango County, the Titusville Area Police

informed Mr. Hodgkiss that he would instead have to contact the Pennsylvania State Police. As a result, Mr. Hodgkiss was informed that the police might take as long as an hour to arrive. Trooper Shawn Armagost was dispatched to [Appellant's] location at 1:32 a.m. Trooper Armagost testified that [Appellant's] location was approximately fifty miles away, and the roads "weren't in the best of shape" due to snow. Trooper Armagost arrived to the scene at around 2:23 a.m.

Trooper Armagost then approached [Appellant's] driver's side door and asked [Appellant] what was going on, [Appellant] stated that he was "on his way to McDonalds" and he went off the road into the ditch. Contrary to what [Appellant] told Mr. Hodgkiss and Trooper Armagost, [Appellant] does not have any kids at home. In fact, his kids live in Alabama. Trooper Armagost observed a strong odor of alcohol emitting from [Appellant's] breathe [sic], slurred speech, and bloodshot eyes. [Appellant] was then asked to perform field sobriety tests. Thereafter, Trooper Armagost determined that [Appellant] was under the influence of alcohol such that he was incapable of safe driving. [Appellant] was arrested, and ultimately transported to the Titusville Hospital, arriving at 2:59 a.m. The phlebotomist was unavailable when Trooper Armagost first arrived, and Trooper Armagost needed to wait an additional twenty minutes for [Appellant's] blood to be drawn. The blood was drawn from [Appellant] at 3:22 a.m. The blood was transported back to the police station and entered into evidence on February 17, 2014, at 5:15 a.m. The results of the blood test revealed [Appellant's] BAC[1] to be 0.298%.

[Appellant's] version of events differs from the facts elicited from Trooper Armagost and Jason Hodgkiss. [Appellant] testified that, while driving to Wal-Mart, his car slid off the road. According to [Appellant], the car became stuck in a ditch at approximately 10:05 p.m. [Appellant] attempted to move the car forward and backward, but he claims there was no traction and the car would not move from the ditch. After realizing the car would not move, [Appellant] called for a tow truck. [Appellant] proceeded to sit in his car awaiting the tow truck for approximately three hours. While waiting for the tow truck,

---

[1] Blood alcohol concentration.

- 2 -

[Appellant] claims to have drank an entire thirty-two ounce Gatorade bottle filled with sixty-six proof fireball cinnamon whiskey. Once Jason Hodgkiss arrived at the scene, [Appellant] again attempted to remove his car from the ditch by accelerating the car backward and forward; however, the tires spun in place and did not move from the ditch.

Trial Court Opinion, 6/22/15, at 5-7 (citations omitted).

On November 20, 2014, following a bench trial, the court found Appellant guilty of one count of Driving Under the Influence - Highest Rate of Alcohol, first offense, in violation of 75 Pa.C.S. § 3802(c). On February 3, 2015, Appellant was sentenced to imprisonment in the Venango County jail for seventy-two hours to six months. Appellant filed his notice of appeal on February 27, 2015. Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Whether the [trial] court erred as a matter of law or abused its discretion in determining that there was sufficient evidence to establish that [Appellant] had driven under the influence with the highest rate of alcohol pursuant to 75 Pa.C.S.A. 3802(C), when the Commonwealth failed to establish when [Appellant] was operating the vehicle on a trafficway or highway in [correlation] to when [Appellant's] blood being drawn for testing for the amount of alcohol, additionally the [C]ommonwealth failed to establish good cause on why [Appellant's] blood was not drawn within two hours or that the Commonwealth proved that [Appellant] did not imbibe alcohol within the two hour period before the blood was drawn.

Appellant's Brief at 5.

Appellant first contends that the evidence was insufficient to convict him of this crime because the Commonwealth failed to establish that he was

operating the vehicle on a trafficway or highway while intoxicated. Appellant's Brief at 10. Appellant maintains that the evidence establishes that the vehicle was not on a highway, but instead, was off the highway in a ditch. *Id.* at 12-13. Accordingly, Appellant argues the Commonwealth has not established evidence sufficient to support his DUI conviction. *Id.* at 13. Appellant further avers that the Commonwealth failed to establish "good cause" as to why Appellant's blood was not drawn within two hours of his operation of the vehicle on a highway. *Id.* at 12. Additionally, Appellant maintains that the Commonwealth failed to prove that he did not imbibe alcohol "within the two hour period before the blood was drawn." *Id.* at 8.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009). "It is within the province of the fact finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and

substitute our judgment for that of the fact-finder. *Commonwealth v. Kelly*, 78 A.3d 1136, 1139 (Pa. Super. 2013).

The Vehicle Code provides, in pertinent part, that:

> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c). The prohibition applies "upon highways and trafficways throughout this Commonwealth." 75 Pa.C.S. § 3101(b). A highway is defined as: "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel...." 75 Pa.C.S. § 102. A trafficway is defined as "[t]he entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." *Id.* "The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003).

As noted, in this case Appellant argues that the evidence was insufficient to support his conviction because "the evidence is clear that the

vehicle was not on the highway but off the highway in a ditch." Appellant's Brief at 13. This argument lacks merit.

This Court has observed, "[T]he suspect location of an automobile supports an inference that it was driven . . . a key factor in the finding of actual control." ***Commonwealth v. Woodruff***, 668 A.2d 1158, 1161 (Pa. Super. 1995) (citation omitted). The testimony at trial established that the front and rear right wheels of Appellant's vehicle were in the ditch off the side of the roadway, and the left-side wheels of the vehicle were located on the right-side shoulder of the road. N.T., 11/20/14, at 8-9. Thus, the fact that Appellant's vehicle was found in a ditch alongside the highway supports the inference that it was, in fact, driven on the highway before stopping in the ditch. Additionally, when Mr. Hodgkiss arrived on the scene where Appellant's vehicle was stuck in the ditch, he noticed a strong odor of alcohol on Appellant and contacted police. ***Id.*** at 7-9. When officers arrived on the scene, Trooper Armagost testified that based on his training and experience, he concluded that Appellant was intoxicated. ***Id.*** at 23-25. Thus, the evidence of record supports the conclusion that Appellant was operating his vehicle on the roadway while under the influence of alcohol.

Appellant attempted to rebut this inference by asserting that he consumed alcohol only after his vehicle stopped in the ditch. Appellant testified that after realizing he could not get the car out of the ditch, he contacted his insurance company for a tow truck. N.T., 11/20/14, at 45.

Appellant maintained that while waiting for the tow truck, he drank an entire thirty-two-ounce Gatorade bottle filled with sixty-six proof fireball cinnamon whiskey. *Id.* at 46-49. The trial court, however, found Appellant's account of events to be incredible. *Id.* at 69; Trial Court Opinion, 6/22/15, at 10. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Kelly*, 78 A.3d at 1139. Thus, Appellant's claim fails.

Furthermore, the trial court provided the following analysis regarding evidence of record establishing that Appellant operated the vehicle while under the influence of alcohol:

> Evidence adduced at trial showed that [Appellant's] engine was on, and [Appellant] repeatedly attempted to remove his vehicle from the ditch by stepping on his vehicle's accelerator. Emerging from this collection of evidence is a clear illustration of the very type of public safety danger that the DUI statute was designed to combat: a drunken driver behind the wheel with the engine running, having driven when he ought not and where he ought not. Accordingly, we conclude that the evidence established beyond a reasonable doubt that [Appellant] was operating or in actual physical control of this car while intoxicated for purposes of the DUI statute.

Trial Court Opinion, 6/22/15, at 9 (citations omitted).

Thus, the evidence of record supports a second basis for the conclusion that Appellant operated his vehicle while intoxicated. Evidence that Appellant operated or was in control of the vehicle in the ditch, and not on the highway, while Appellant was intoxicated was sufficient to establish

commission of this offense. It is of no relevance that Appellant was unable to move the vehicle from the ditch.

> The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.

*Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005) (internal citations omitted).

This Court addressed a similar claim in *Williams*, where the defendant was convicted of two counts of driving under the influence (DUI). *Wiilliams*, 871 A.2d at 257. In that case, the defendant argued that the evidence was insufficient to support his DUI convictions because the Commonwealth failed to establish that he was in "actual physical control" of the vehicle while intoxicated because the vehicle was off the roadway and was not moving. *Id.* at 258. The trial evidence disclosed that police found the defendant at 4:00 a.m. in his car with the headlights and radio on and the engine running; the car was parked diagonally across two handicapped spaces in front of an establishment that did not serve alcoholic beverages; the defendant's employer owned the car, and only the defendant had permission to drive it; and the defendant was in the driver's seat with his

hands and head on the steering wheel. *Id.* at 260-261. The defendant showed visible signs of intoxication, admitted drinking, failed several field sobriety tests, and had a BAC of .138%. *Id.* at 261. The court specifically rejected as incredible the defendant's defense that someone else had been driving the vehicle. *Id.* This Court agreed with the trial court's conclusion that the evidence was sufficient to establish that the defendant was in actual control of a motor vehicle while intoxicated and found irrelevant the fact that the vehicle did not move. *Id*. *See also Commonwealth v. Yaninas*, 722 A.2d 187, 188-189 (Pa. Super. 1998) (court found the appellant was in actual physical control of vehicle for purposes of DUI conviction where Appellant was found behind wheel of vehicle, on the berm of a highway, with engine running and lights on, despite the car not moving).

Thus, there is no requirement that Appellant actually succeed in moving the vehicle for a determination to be made that Appellant operated or was in actual physical control of the vehicle for purposes of the DUI statute. Here, the totality of circumstances established that Appellant operated or was in actual physical control of the vehicle when he attempted to move the vehicle from the ditch. The record reflects that while Appellant's vehicle was in the ditch, the engine of the vehicle was on, Appellant sat behind the steering wheel in the driver's seat and depressed the accelerator in an attempt to get the vehicle out of the ditch. N.T., 11/20/14, at 7-8, 16, 48, 60. Mr. Hodgkiss was with Appellant during

Appellant's efforts to move the vehicle and testified that when he approached Appellant, he could smell alcohol on Appellant's breath. *Id.* at 7-8. Moreover, in his version of events, Appellant explained that he consumed alcohol after becoming stuck in the ditch but before attempting to move the vehicle from the ditch with Mr. Hodgkiss's assistance. *Id.* at 46-48. Thus, we agree with the trial court that the evidence established beyond a reasonable doubt that Appellant was operating or was in actual physical control of his car while intoxicated for purposes of the DUI conviction.

Next, we address Appellant's assertion that the Commonwealth failed to establish "good cause" as to why Appellant's blood was not drawn within two hours of Appellant operating the vehicle on a highway. Appellant's Brief at 12. Relatedly, Appellant claims that the Commonwealth failed to prove that he did not imbibe alcohol "within the two hour period before the blood was drawn." *Id.* at 8.

In this case, the evidence of record establishes that Appellant was in control of the machinery of his vehicle at some point after 1:30 a.m., when he was attempting to remove it from the ditch. N.T., 11/20/14, at 7-10. As noted previously, the fact that Appellant could not move the vehicle from the ditch is irrelevant to a determination as to whether he operated the vehicle for purposes of the DUI statute. *Williams*, 871 A.2d at 261. Additionally, the record reflects that Appellant's blood was drawn at 3:22 a.m. at Titusville hospital and at that time, his blood alcohol level measured

- 10 -

0.298%. N.T., 11/20/14, at 26-28. Thus, the evidence of record reflects that Appellant's blood was drawn within two hours from his operation of the vehicle, and the blood alcohol level measured in excess of 0.16%. 75 Pa.C.S. § 3802(c).

To the extent that testimony regarding the times of the blood draws was not exact and allowed for the possibility that more than two hours elapsed from when Appellant operated the vehicle until the blood draw and measurement of Appellant's blood alcohol level occurred, the legislature has provided an exception to the two-hour timeframe. Section 3802(g) provides as follows:

> **(g) Exception to two-hour rule.--**Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
>
>> (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
>>
>> (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(g).

The trial court provided an alternative analysis, assuming *arguendo* that Appellant's testimony and related claim that the blood draw was taken

two hours after operation of his vehicle was accurate. In that analysis, the trial court found that the Commonwealth established good cause for any such delay:

> [W]e did not believe [Appellant's] testimony to be credible in the least, but even if we did find [Appellant's] testimony to be true, we believe the Commonwealth has shown "good cause" as to why there was a delay in testing [Appellant's] BAC level. The officers in this case acted diligently throughout the investigation, and especially under the circumstances of an early-morning accident on a snowy road. The area in which [Appellant's] accident occurred happened to be fifty miles away from Trooper Armagost's location - something beyond his control. Trooper Armagost determined that [Appellant] was under the influence of alcohol and transported him to the hospital in a timely manner. Trooper Armagost testified that he was "at the will of the hospital," and needed to wait more than twenty minutes for a phlebotomist to draw [Appellant's] blood. The delay in obtaining [Appellant's] blood could not be attributed to any dilatory tactics on the part of law enforcement, but rather it was due to the unavailability of the phlebotomist. More significantly, the delay was due to the unavoidably long distance Trooper Armagost needed to travel in order to find [Appellant's] stationary vehicle. The court finds that the police actions vis-a-vis this [Appellant] were reasonable under the circumstances, and that the Commonwealth has shown good cause for the delay in securing a sample of [Appellant's] blood. We will not reward [Appellant] for being "fortuitous" enough to drive under the influence a great distance away from a police barracks.

Trial Court Opinion, 6/22/15, at 14-15 (internal citations omitted). Additionally, the trial court concluded that the Commonwealth established the second necessary element under this exception. Specifically, the Commonwealth proved that Appellant had not imbibed any alcohol or used any substance between the time that he was arrested and the time the blood sample was obtained, as follows: "[Appellant] was placed into the rear seat

of the responding officers' patrol car after failing his sobriety tests. Directly after that, [Appellant] was transported to the Titusville Hospital, where he was monitored by both Corporal Bunyak and Trooper Armagost." Trial Court Opinion, 6/22/15, at 15.

The record supports the trial court's analysis, and we agree with the trial court's conclusion. Thus, even assuming *arguendo* that more than two hours elapsed between Appellant's operation of the vehicle and the drawing and measuring of Appellant's blood, such delay is excused pursuant to 75 Pa.C.S. § 3802(c). Therefore, we conclude there is sufficient evidence of record to support Appellant's conviction under section 3802(c).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/2016